W. H. SHAHAN, Appellant, v. BAYER VEHICLE COMPANY et al., Appellees.

ACCORD AND SATISFACTION: Pleading—Sufficiency. An accord and satisfaction is sufficiently pleaded by an answer which *substantially* asserts that defendant determined the amount which it claimed it was owing plaintiff on a disputed, unliquidated claim; that defendant sent plaintiff a check for said amount, along with a statement that such amount was correct; that later, and before plaintiff cashed said check, defendant again informed plaintiff that it (defendant) would pay no greater sum; and that plaintiff thereafter cashed said check.

ACCORD AND SATISFACTION: Nature and Requisites—Unliquidated Claims—Cashing Check—Effect. The cashing of a check by the payee, with knowledge that the maker is tendering it in

full and complete satisfaction of a disputed, unliquidated claim, works a complete accord and satisfaction, which may not be repudiated by a subsequent attempt to return the money.

*Appeal from Grinnell Superior Court.*—P. G. NORRIS, Judge.

THURSDAY, APRIL 5, 1917.

ACTION to recover the amount alleged to be due for personal services. General denial on the part of the defendants. A special plea of accord and satisfaction. Judgment for the defendants in the court below, based on the finding of accord and satisfaction. Plaintiff appeals.—*Affirmed.*

*J. H. Patton,* for appellant.

*Rayburn & Lyman,* for appellees.

GAYNOR, C. J.—In the first count of plaintiff's petition, he seeks to recover for services rendered under a written contract entered into on or about the 10th day of April, 1914. This written contract provides that the defendants pay the plaintiff the sum of $65 per month for 10 approved sales of certain buggies manufactured by defendants, and that proportion for less, and, in either event, the actual expenses of the plaintiff while on the road. Further, the plaintiff was to receive $7.50 for each approved sale over 10. Under this contract, plaintiff worked in the state of Texas between April 14th and June 20th. Plaintiff claims he sold 15 buggies or rigs, for which he was entitled to receive a commission of $7.50 per rig, making a total amount of $112.50.

In the second count, plaintiff alleges that, while working under this contract, and between the dates above set out, he performed extra services for the defendants not required by his contract, for which he asks the sum of $17.50.

In the third count, he alleges that the contract referred

to in the first count was modified on June 14th, and that he worked for the defendants under the modified contract in the states of Colorado, Nebraska and Missouri; that this modified contract provided that plaintiff was to receive $2.50 per day and expenses, and necessary help, and railroad fare from the point where his work ceased, to Grinnell, Iowa, and the further sum of $7.50 for each approved sale over 9 per month; that, on the 28th day of June, 1914, he entered upon his work under this modified contract, and continued to work under this modified contract until November 7, 1914; that. between said dates he worked 100 days, for which he was entitled to receive $250; that he incurred expenses for help in carrying out defendants' business during that time in the amount of $5.35, and that he expended railroad fare in the amount of $3.07, returning from Bethany, Missouri, to Grinnell, Iowa; that during that time he made 18 approved sales, for which he was entitled to receive $7.50 on each sale; that on account of such sales there is due him the sum of $67.50.

The fourth count alleges an overcharge on the part of the defendants against the plaintiff on a certain buggy handled by the defendants.

The fifth count alleges that, on account of the matters hereinbefore set out, there is due plaintiff $461.55, and that the defendants are entitled to a credit thereon of $269.75, leaving a balance of $191.80 due to the plaintiff.

The sixth count alleges that, on December 1, 1914, defendants sent plaintiff a check for $63.80, accompanied by a statement of account between plaintiff and defendants, said statement of account containing the following: "Debit item, check to balance account, $63.80;" that subsequently, the plaintiff protested to defendants, in a conversation had between plaintiff and a member of defendants' company, one J. E. Bayer, that the check did not represent a correct balance; that subsequently, on the 20th day of December, 1914,

the plaintiff, acting under a misapprehension of the legal effect thereof, cashed said check, and, on January 7, 1915, before the original notice was served on the defendants of the commencement of this action, tendered back the $63.80, being the amount offered in settlement of account by defendants; that the defendants refused to accept the tender, and plaintiff says he is now willing and able to return it; that he is willing and ready to return to defendants the $63.80 at any time, and is willing to deposit the same with the court for defendants' benefit.

Plaintiff demands judgment for ·$191.80.

The defendants answer:

1st. By a general denial; then by a specific denial; then admit that the defendants are a copartnership, and J. E. Bayer is a member of the firm; admit entering into the contract alleged by plaintiff in his petition; admit the making of the modified contract; deny that plaintiff performed any services for the defendants, except under the contracts referred to in the petition; allege that, prior to the modified contract, plaintiff sold only 12 rigs, instead of 15 rigs, as claimed by plaintiff; that, under the modified contract, the plaintiff worked only 97 days, instead of 100, and allege that, after deducting the amount for which defendants are entitled to credit, there was, on December 1st, but $63.80 due; that this amount was paid by check, which was received by the plaintiff and subsequently cashed by him.

2d. That, after the plaintiff left the employment of the defendants, they rendered him a statement of account showing the amount due him; that, after the receipt of the said statement, the plaintiff denied the correctness of it, but was told by J. E. Bayer, a member of the firm, that the statement was correct; that the true amount due was $63.80; that they delivered him a check for that amount, and that they did not intend to pay him anything further; that, in full and final settlement of the amount due the plaintiff,

the defendants delivered to the plaintiff their certain check for $63.80.

The plaintiff for reply denies especially the affirmative matters set out in this answer, and, in so far as the answer tenders a plea of settlement, denies that there has been a settlement of accounts, or of the matters in controversy herein between the plaintiff and defendants.

We have recorded herein the issues tendered by the parties in this suit that it may be known therefrom that the account sued on was unliquidated and in dispute between the parties, not only at the time the suit itself was instituted, but at the time it is claimed the accord and satisfaction took place.

Upon the issues thus tendered, the cause was tried to the court, a jury being waived.

At the conclusion of the testimony, the court found, as a matter of fact, that there was an accord and satisfaction of the matters in controversy between the plaintiff and the defendants, and dismissed plaintiff's petition, and entered judgment against plaintiff for costs. From the judgment entered against him, plaintiff appealed.

As this is a law action, it is triable in this court only upon error. Inasmuch as the court did not consider or determine the case upon the merit of the controversy, but disposed of it entirely upon the ground that there was an accord and satisfaction, the controversy in this court clusters around but two propositions:

(1)   Was there a plea of accord and satisfaction presented by the defendants? It is contended by the plaintiff that there was not, and it is urged that there was error in admitting evidence tending to show this defense, on the ground that such evidence is irrelevant to any issue tendered.

(2)   Did the court err in finding as a matter of fact

.that there was an accord and satisfaction, assuming that such plea had been properly presented?

If it be found, upon an examination of this record, that no plea of accord and satisfaction was presented for the determination of the court, then the court erred not only in the admission of evidence tending to establish such issue, but in considering it an issue in the cause. It is fundamental that the evidence must be confined to the point in issue, and a party has a right to have excluded any evidence tending to support an issue not tendered, and the court has no right to consider or determine a case upon an issue not presented, over the objection of the other party.

1. ACCORD AND SATISFACTION: pleading: sufficiency.

We first address ourselves to this question: Does the record present an issue of accord and satisfaction? It is true the answer does not plead in terms accord and satisfaction, but, under our form of pleading, technical nicety is not required. It is the duty of the pleader to present for the consideration of the court the ultimate facts which he intends to establish by evidence, which, when established, lead to the ultimate conclusion, whether of law or fact, which he desires the court to consider. Plaintiff, in the sixth count of his petition, evidently anticipating this defense, admits: That he received the check for $63.80; that it was accompanied by a statement of his account; that the statement disclosed that the check was in full of the account; that, after receiving the account and the check, he had further conversation with a member of defendants' firm, and informed him that the check did not represent the true balance; that, after this conversation, in which the defendants asserted that that was the balance due, and all that they would pay, he cashed the check and retained the money until the day this suit was commenced, when he ten-

dered it back.    To excuse his act, he says that he cashed it under a misapprehension of the legal effect of so doing.

· The defendants plead that, after deducting all credits and an overpayment of $3.95, there was then due the plaintiff but $63.80; that this amount was paid to the plaintiff by check; that this check was cashed by the plaintiff; that, at the time they sent the check, they sent him a statement showing that this amount was the balance due as claimed by the defendants; that, after receiving the statement and the check, plaintiff talked with· one Bayer, a member of the firm, and was told then by Bayer that the statement was correct; that the check showed the amount due; that they delivered him the check for that amount in full and final settlement, and told him that they did not intend to pay him any further sum; that it was after this that the defendant, with full knowledge of defendants' attitude, cashed the check.    We think this fairly presents an issue of accord and satisfaction, and that the court did not err in treating that issue as presented by the pleadings, and did not err in admitting testimony to sustain it.

Accord and satisfaction is where one

2. ACCORD AND SATISFACTION: nature and requisites: unliquidated claims: cashing check: effect.

accepts something tendered to him by another in fulfillment of the other's obligation to him, knowing that the other is tendering it in full satisfaction of his obligation.    It is not our purpose to give a definition which would cover all cases which might arise in which this issue might be an important factor for consideration, yet we may say generally that, when a party accepts something different from what he is entitled to, where the amount is unliquidated, and there is an honest dispute as to what he is entitled to, he is bound by the acceptance, and the matter thereafter is not subject to be reopened by either party.

The rule seems to be well recognized that, where one makes demand upon another for the discharge of an unliq-

uidated demand, and the liability of the alleged debtor is in good faith disputed, or the amount of the liability is disputed, the tender and acceptance of a less sum than might upon a full investigation be found due, discharges the debt in full. The law looks with favor upon the adjustment of controversies without the intervention of courts. It will not allow one to provoke a controversy with his creditor and bring him into court, after he has accepted and retained money which has been tendered him by his creditor in full settlement of his claim, when he knew at the time that the other contended that that was all that was due, and in good faith denied all further liability.

From the acceptance and retention of the amount tendered under such circumstances, a presumption arises that it was accepted and retained in full satisfaction of the obligation, nothing further appearing. To constitute an accord and satisfaction, under such circumstances, all that is necessary is that the money should be tendered in satisfaction of the claim; that the tender be accompanied with such acts and declarations as amount to a condition that, if the money is taken, it is accepted in satisfaction. The conditions under which the tender is made, and the conduct of the party at the time of the tender, however, must be such that the party to whom it is tendered is given to understand that, if he takes it, he takes it in satisfaction of his claim, so far as the other party is concerned. He must either refuse or accept it. If he accepts it, he is bound. If he takes it, his claim is canceled.

As said in some cases, it is the duty of the debtor, when he delivers the money to his creditor upon a disputed, unliquidated demand, to indicate that his purpose in delivering it is that it shall be accepted in full satisfaction, and not that, if the creditor dissents from the condition, to wit, that it be taken in full satisfaction, he might keep the money tendered, to apply on whatever amount might ultimately

be found to be due him.  The rule is well stated in *Sparks v. Spaulding Manufacturing Co.,* 158 Iowa 491, 501, quoting from *Johnston v. Burnett,* 17 Cal. App. Rep. 497:

"Where tender is made'to a party to whom a debt is owing of an amount less than that which is claimed to be due, and the amount claimed to be due is unliquidated, and the party making the tender in express terms offers the payment as in full satisfaction of the disputed account, the offeree in that case is bound either to reject the offer or to accept it upon the precise terms denoted by the tender.  *  *  *  If he appropriates to his own use the amount tendered, he cannot afterwards be heard to say that he did so upon any terms other than those which the person making the offer imposed upon him."

For a full discussion of this court's views upon the question under consideration, see *Sparks v. Spaulding Mfg. Co.,* 158 Iowa 491, and *Keck v. Hotel Owners Mut. Fire Ins. Co.,* 89 Iowa 200.  In 1 Corpus Juris at page 551, Section 71, we find the rule stated to be:

"Where a claim is unliquidated or in dispute, payment and acceptance of a less sum than claimed, in satisfaction, operates as an accord and satisfaction"—citing in support of the rule the two cases from our own court hereinbefore set out.

It is further said in this same section:

"The rule that the receiving of a part of the debt due, under an agreement that the same shall be in full satisfaction, is no bar to an action to recover the balance, does not apply, where the plaintiff's claim is disputed or unliquidated.  Under these circumstances there is a sufficient consideration for the settlement.  The fact that the creditor was not legally bound to make any abatement of his claim, or that the amount accepted was much less than the creditor was entitled to receive, and would have recovered had he brought action,  *  *  *  does not in any way

affect the operation of the rule, and it is of no importance which of the parties was right in his contention, or that in fact they were both wrong."

It is further said in Section 72:

"The rule, it has been said, had its origin in cases of unliquidated claims where the settlement was in the nature of a compromise; but it has been extended to all cases of dispute where an offer of settlement has been made and an acceptance signified by taking the money so offered. Where a claim is unliquidated, and in dispute, and less than the amount claimed is given and accepted in full satisfaction thereof, the concession made by one of the parties is a good consideration for the concession made by the other, or, as otherwise expressed, the fact of the uncertainty of the claim, or an honest difference as to what is due on an unliquidated demand, furnishes the consideration"—citing authorities.

This brings us to a consideration of the evidence upon which the court rests its finding of accord and satisfaction. Plaintiff commenced work for the defendants in the state of Texas under a written contract, on or about the 10th day of April, 1914, and worked under said contract until the 20th day of June, 1914. Between the 20th day of June and the 28th day of June, this contract was modified. Under the modified contract, plaintiff worked for the defendants in the states of Colorado, Nebraska and Missouri from the 28th day of June, 1914, until about the 7th day of November, 1914. On or about the 7th day of November, the plaintiff returned to the city of Grinnell, the home of the defendants. After plaintiff returned, and on the 23d day of November, 1914, defendants sent him an itemized statement of his account, showing a balance due of $63.80, enclosing a check payable to plaintiff as follows:

"No. 9. ·                    Rock Valley, Iowa, 11-23-14.

"State Bank of Rock Valley:  Pay to W. H. Shahan, or order, $63.80."

The statement showed that the check enclosed was to balance the account. Plaintiff received this statement of account and check about the 1st of December, 1914. They came to him in the same envelope. He said: "I carried the check for nearly a month." He was then asked: "Did you ever cash the check? A. Yes, sir."

Thereupon, it was conceded that the proceeds of the check are still in the possession of the plaintiff. It appears from the endorsement on the check that it was paid at the bank on which it was drawn, on December 28, 1914. He testifies that, after he had received the check and the statement of account showing that the check was tendered to him in full of the account, he had a conversation with Mr. Bayer, one of defendants' company, at the Elks' Club Room; that they then discussed some differences about the debits and credits in the account; that, at that time, he had not cashed the check; that, in the conversation at the Elks' Club, Mr. Bayer told him, in substance, that the $63.80 was all that the company owed him, and was all that they intended to pay him. On the next morning, he cashed the check.

He further testified that, after he had received the check, about December 1st, he received through the mail from the defendants a letter, in which the defendants said to him: "It seems by *this* we have paid you a little too much." By "this" he refers to a list of sales requested of him in one of the conversations while in dispute about the account. He further testified:

"In our conversation, I requested him to give me the number of different parties I had sold to in Texas, and in our conversation we talked about that account, and he said he had paid me too much. We were still negotiating about the settlement."

He further testified that he received the letter in which

defendants said they had paid him too much, before he had cashed the check.

The following letter appears of record, dated January 17, 1915:

"Grinnell, Iowa, January 17, 1915.

"Bayer Vehicle Company, Grinnell, Iowa: Enclosed find bank draft for $63.80. On or about December 1, 1914, I received through your Mr. Bayer a check for $63.80 accompanied by a statement of account purporting to show a balance due me from your company, and enclosing a check for $63.80, in settlement of account to that date.

"The statement of account is incorrect, the balance due me being greater than the amount of the check, and I decline to accept the check $63.80 in settlement of the amount, the enclosed draft being a return to you of said $63.80.

"I am this day commencing action against you for the amount due me on account, including the $63.80, represented by the check above referred to and the enclosed draft."

This letter was signed by the plaintiff.

It further appears from the testimony that there was a dispute between the plaintiff and the defendants as to the number of sales made by the plaintiff while in Texas, for which he was entitled to credit. There was a clear dispute as to the claims made in the second count of the petition. In fact, the record shows a dispute as to all matters involving the difference between the amount of the check and the amount claimed by the plaintiff, and that this difference of opinion was fully canvassed by the parties in their conversation at the Elks' Club, and that the plaintiff was then informed that defendants would not pay more than the amount tendered him by the check; that it was after this that plaintiff cashed the check and appropriated the money to his own use; that he did not tender it back until the 7th day of January, 1915, on the day he com-

menced this suit. The evidence discloses that the plaintiff's claim was unliquidated. It discloses that there was a dispute between the plaintiff and the defendants touching the amount plaintiff was entitled to receive. It appears that the defendants sent to the plaintiff a statement of the account as they claimed it to be, and with the account sent the plaintiff a check for the balance due, as they claimed; that the account showed that the check was sent in full payment of the balance due; that the plaintiff knew that a controversy existed between him and the defendants touching the amount due; that he met with one of defendants' representatives to discuss it, and was fully informed that the check was tendered in full payment of any balance due from the defendants to the plaintiff; that, thereafter, he cashed the check, and, as he says, put the money in his pocket, and held it until the 7th day of January, 1907, at which time he seems to have changed his mind and tendered back to the defendants the amount realized from the check, and brought this suit.

As to what was done, touching what is claimed to be an accord and satisfaction, there is but very little dispute in the testimony. The parties are practically agreed. The only question is whether or not, under the law, this constitutes an accord and satisfaction; whether or not, under the law and the facts disclosed in this record, the court was justified in holding the plaintiff bound as for accord and satisfaction. We have no hesitancy in saying that, under the rules hereinbefore announced, and under the facts which developed from this record, the court was right in dismissing plaintiff's petition.

With this conclusion, the case must be, and is,—*Affirmed.*

LADD, EVANS and SALINGER, JJ., concur.